UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BOBBY TURNER,

        Plaintiff,

v.                          Case No. 3:04-cv-632-J-32MMH

R. SOLORZANO,

        Defendant.

**<u>ORDER</u>**[1]

**I. Status**

Plaintiff, an inmate of the Florida penal system who is proceeding <u>pro se</u>, initiated this cause of action by filing a Civil Rights Complaint Form (Doc. #1) (hereinafter Complaint) pursuant to 42 U.S.C. § 1983 on July 29, 2004. Plaintiff names Dr. Ronald Solorzano, the Chief Medical Officer at Hamilton Correctional Institution (hereinafter HCI), as the sole Defendant. Plaintiff claims that the Defendant was deliberately indifferent to his serious medical needs when he denied Plaintiff's request for orthopedic shoes.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. #21), filed December 19, 2005.[2]  The Court previously advised Plaintiff of the provisions of Fed. R. Civ. P. 56.  See the Court's Order (Doc. #6), filed October 7, 2004, at 4-5.  Plaintiff has responded to the motion.  See Memorandum in Opposition to Motion for Summary Judgment (Doc. #26) and Affidavit in Support of the Memorandum in Opposition to Motion for Summary Judgment (Doc. #27), filed February 15, 2006.

## II.  Summary Judgment Standard

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In re Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).

The parties' respective burdens and the Court's responsibilities are outlined as follows:

---

[2] The Court will refer to the exhibits appended to Defendant's Motion for Summary Judgment as "Ex."  Ex. A is an affidavit, which has numerous documents appended to it.  The Court will refer to the documents appended to Ex. A as "Defendant's Doc."

The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. <u>Taylor v. Espy</u>, 816 F.Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>[,] 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Id</u>. For factual issues to be considered genuine, they must have a real basis in the record. <u>Matsushita</u>, 475 U.S. at 586-87, 106 S.Ct. at 1355-56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct. at 2135. The Court must avoid weighing conflicting evidence or making credibility determinations. <u>Id</u>. at 255, 106 S.Ct. at 2513-14. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id</u>. Where a reasonable fact finder may "draw more

> than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918-19 (11th Cir. 1993).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted).

> If a reasonable jury could not find in favor of the nonmoving party, no genuine issue of material fact does exist; and summary judgment is proper. Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994). A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). As Fed.R.Civ.P. 56(e) states, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004).

## III.  Plaintiff's Allegations

Plaintiff alleges that he was born with poliomyelitis and a deformed left foot.  All his life, he has required special shoes and physical therapy.  Injuries to Plaintiff's Achilles tendon in 1969 and his right foot and leg in 1973 further disabled him.

Plaintiff was issued a special shoe pass in October of 1996. This shoe pass was honored until he arrived at Liberty Correctional Institution.[3]

> Since Petitioner ha[s] been transfer[red] to Hamilton [Correctional] Institution,[4] he has try [sic] to get medical help[.]  Dr. Solorzano is the Chief Medical Officer at Hamilton, who refuse[d] to give the Petitioner a shoe pass because Dr. Goss at Liberty Correctional Institution overruled the Chief Podiatrist Dr. H. McCloney.  Dr. McCloney recognized the Petitioner's needs for his handicap.  Dr. Solorzano base[d] his decision on non-medical factors, claiming [neither] he nor the F.D.O.C. has any obligation to provide a special shoe pass to the Petitioner.
>
> Dr. R. Solorzano has been presented evidence to substantiate the Petitioner's need for orthopedic shoes.  Dr. Solorzano possesses the requisite intent sustaining the Petitioner's claim of deliberate indifference to medical needs.  Dr. Solorzano has not relied on medical grounds to deny the Petitioner his special shoe pass.

Complaint at 9A.

---

[3] Plaintiff was transferred to Liberty Correctional Institution on February 5, 1998.  Defendant's Doc. 2 at 1.

[4] Plaintiff was transferred to Hamilton Correctional Institution on March 5, 2004.  Defendant's Doc. 2 at 2.

## IV. Law and Conclusions

As noted previously, Plaintiff claims that the Defendant was deliberately indifferent to his serious medical needs when he denied Plaintiff's request for orthopedic shoes.

> To prevail on this claim, Plaintiff "must satisfy both an objective and a subjective inquiry. First, the plaintiff must prove an objectively serious medical need. Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal quotation marks omitted) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam).

When describing a serious medical need, the Eleventh Circuit has stated:

> In our circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Taylor, 221 F.3d at 1258 (alteration in original) (quoting Farmer, 511 U.S. at 834, 114 S.Ct. 1970). Our precedent recognizes a range of medical needs that are sufficiently serious to constitute "serious medical needs" for purposes of the Eighth Amendment and some medical needs that are not.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (footnotes omitted).

Here, the record does not reflect that Plaintiff has a serious medical need. Plaintiff's medical records document the following irregularities with respect to Plaintiff's lower extremities. Medical record entries demonstrate that Plaintiff is missing the second toe on his left foot due to an accident in 1973. Ex. A at 7, 22; Defendant's Doc. 4 at 2. According to Dr. Daniel P. Cherry III, the Director of Health Services for the Florida Department of Corrections:

> [T]here are no clinical findings indicating that Turner is unable to ambulate due to the missing toe. Thirty years have passed since Turner's accident and he has adapted to the missing toe. The absence of a single toe is a minor deformity and typically does not require a special device for functional ambulation.

Ex. A at 22.

The medical records also indicate that Plaintiff has a metal rod or plate in his right leg that was used to repair a fracture in his femur in 1973 and that he injured his Achilles tendon in 1969 or 1970. Id. at 22-23. "These old injuries in and of themselves do not provide a basis for exempting Turner from wearing the standard state-issued shoes or constitute a condition for which special shoes are medically indicated." Id. at 23.

Finally, the medical record entries establish that Plaintiff's left leg is 3/8 of an inch shorter that his right leg. Id. at 10; Defendant's Doc. 6 at 9. Such a condition does not constitute a serious medical need. See Haverty v. Crosby, No. 1:05-cv-00133-MP-

- 7 -

EMT, 2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006) (finding that a 3/4 of an inch disparity in the length of the plaintiff's legs "does not rise to the level of a serious medical need"); see also Ex. A at 21-22.

In sum, the Court does not find that Plaintiff's old injuries to his feet and leg and the small disparity in the length of his legs constitute a serious medical need.  Even assuming arguendo that the combination of these old injuries and the disparity in the length of Plaintiff's legs constitute a serious medical need, there is no evidence that the Defendant was deliberately indifferent to such a need.

To satisfy the subjective element of a deliberate indifference claim, "Plaintiff must prove three things: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'"  Bozeman 422 F.3d at 1272 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).  Here, Plaintiff has not satisfied the subjective element of the deliberate indifference claim against the Defendant.  The following uncontroverted facts are pertinent.

On March 17, 2004, Plaintiff submitted an informal grievance to the medical department at HCI, which stated the following:

> I went to sick call to see the doctor about pain in my legs.  I were born with a disabling disease poliomyelitis, commonly known as polio.  My Achilles tendon been cut, I have a steel plate implanted from my knee to hip.  The shoes the state issue me are falling

>  apart, one of them don't have any heel left[.]
>  When I walk it causes me great pain[.]  This
>  grievance [is] about being told by Nurse Hall,
>  that he would not put me in to see the doctor,
>  or waste his time, because I were not get any
>  shoes[.]  I feel like he acted in a malicious
>  deliberate indifference to the patient medical
>  needs.

Defendant's Doc. 8 at 4.[5]

The response to this grievance, which was signed by Kay Smith and Defendant Solorzano, states the following:

>  Your complaint has been evaluated.  It is
>  noted that you were seen in sick call on
>  03/16/04 requesting special shoes.  The nurse
>  noted that you were seen by the M.D. on
>  11/10/03 while you were at Baker CI and
>  special shoes [were] denied.  The nurse
>  further noted that you were seen by the RN
>  Supervisor at Baker CI on 01/28/04 who
>  explained the Department's criteria for
>  special shoes.  You were advised by the nurse
>  that you had the option of discussing this
>  with the physician at your next chronic
>  illness clinic appointment.[6]

Id.

---

[5] Plaintiff also appended a copy of this grievance to his Complaint to support his claim.

[6] The record reflects that Plaintiff's next chronic illness clinic appointment was on June 4, 2004.  He had another chronic illness clinic appointment on December 3, 2004.  He did not complain of any pain in his lower extremities and did not request special shoes at either of these appointments.  Additionally, for the remainder of his stay at HCI (until May 13, 2005, when he was transferred to Union Correctional Institution), Plaintiff did not report to sick call with any complaints about his lower extremities.  See Ex. A at 20.  The fact that Plaintiff did not make any complaints about his lower extremities or request special shoes at his chronic illness clinic appointments supports the Court's finding that he did not have a serious medical need.

The Defendant has provided the Court with an affidavit, in which he states the following:

> 1. I am a licensed medical doctor practicing in the State of Florida.
>
> 2. I am a senior physician and chief health officer at Hamilton Correctional Institution (Hamilton CI) of the Florida Department of Corrections, and have oversight responsibility for the delivery of health services to inmates at Hamilton CI and I also provide clinical care to the inmates at Hamilton CI.
>
> 3. I have been employed by the Department of Corrections for approximately eight years.
>
> 4. I have reviewed the relevant medical records for Bobby Turner (DC# 026447) in connection with the claims he raised in his civil rights complaint, case no.: 3:04-cv-632-J-32MMH.
>
> 5. Turner first arrived at Hamilton CI on March 5, 2004.
>
> 6. Turner's medical records indicate that Turner reported to sick call on March 16, 2004 and requested special shoes. (Attached documents, p. 1). Nurse R. Hall reviewed Turner's records and noted that Turner was seen by a doctor at Baker CI on November 10, 2003 and by the supervising registered nurse at Baker CI on January 28, 2004 and his request for special shoes was denied. According to Nurse R. Hall's notes, Turner stated he would file a lawsuit and he demanded to speak with a physician. Nurse R. Hall advised Turner to discuss the matter with the physician at the next CIC (chronic illness clinic) appointment.
>
> 7. The following day, Turner filed an informal grievance against Nurse Hall. (Attached documents, p. 2). . . .

    8.   On April 6, 2004, the former senior health administrator at Hamilton CI, K. Smith, issued a response to Turner's grievance. . . .

    9.   I co-signed the response to Turner's grievance. (Attached documents, p. 2). In co-signing the response, I was not denying a request for special shoes or making a determination as to whether special shoes were medically necessary for Turner. Instead, I was concurring with the response to Turner's grievance about Nurse R. Hall's action of allegedly prohibiting Turner from seeing a doctor. Turner was informed that he could discuss his special shoe request with a doctor at his next CIC appointment.

    10.   Other than co-signing the response to Turner's grievance about Nurse R. Hall's actions, my only involvement with Turner was to write two incidental entries[7] in his medical file. (Attached documents pp. 4, 6). On September 20, 2004, I wrote an incidental entry indicating that the results of Turner's dipstick urinalysis test was within normal limits and that his CIC appointment should remain scheduled. On October 5, 2004, I wrote an incidental entry indicating that Turner has an error of refraction and visual acuity of 20/100 in his left eye and 20/200 in his right eye (meaning, in essence, that he needs eye glasses). I further noted that an optometry appointment was scheduled and that Turner's low bunk/restricted activity pass was renewed for one year.

    11.   The medical records indicate that Turner did not report to sick call with any complaints about his lower extremities during his stay at Hamilton CI from March 5, 2004 to May 13, 2005, except that he went to sick call on March 16, 2004 to request special shoes. (Attached documents, pp. 1, 3-12). Furthermore, although Turner was made aware that he had the option of discussing his

---

[7] Incidental entries are notes entered in a patient's medical file without seeing the patient. See Ex. F at 3 n.1.

> special shoe request with a physician at his CIC appointments, the medical records indicate that Turner did not raise the issue at his CIC appointment with Dr. D. Hall on June 4, 2004 or at his appointment with Dr. Dela-Cerna on December 3, 2004. (Attached documents, pp. 3, 8).

Ex. F at 1-4 (footnote omitted).

The record reflects that there is no causal connection between the actions or omissions of the Defendant and any constitutional deprivation. "A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005) (citing Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)), cert. denied, 126 S.Ct. 1914 (2006).

Here, it is clear that the Defendant did not deny Plaintiff's request for special shoes. Instead, the record demonstrates that on November 10, 2003, while Plaintiff was incarcerated at Baker Correctional Institution, Dr. Summerlin denied Plaintiff's request for special shoes. On March 16, 2004, shortly after transferring from Baker Correctional Institution to HCI, Plaintiff requested special shoes from Nurse Hall. Nurse Hall reviewed the medical record and noted that Dr. Summerlin had denied Plaintiff's request for special shoes approximately four months earlier.

Plaintiff filed a grievance against Nurse Hall and specifically stated that the "grievance [was] about being told by Nurse Hall, that he would not put [Plaintiff] in to see the doctor,

or waste his time, because [Plaintiff would] not get any shoes[.]" Defendant's Doc. 8 at 4. Defendant's sole role in this case was his cosigning of a response to Plaintiff's grievance about Nurse Hall's actions. Plaintiff's claim that the Defendant improperly denied this grievance fails to state a § 1983 claim. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct), cert. denied, 530 U.S. 1264 (2000).

Even assuming arguendo that the grievance could have been construed as a request for special shoes instead of a complaint about Nurse Hall's actions during Plaintiff's March 16, 2004, visit to sick call, Plaintiff's claim must fail. There is simply no proof that the Defendant had subjective knowledge of a risk of serious harm to Plaintiff. In fact, the most recent entries in Plaintiff's medical record would lead a reasonable person to believe Plaintiff did not have a serious medical need that would be

alleviated by providing special shoes.[8]  Thus, Plaintiff's deliberate indifference claim against the Defendant must fail.[9]

---

[8] Plaintiff contends that "the Chief Podiatrist[,] Dr. H. McCloney . . . recognized the Petitioner's needs for his handicap." Complaint at 9A.  However, the Defendant has provided an affidavit from T. Howard McCluney, Jr., in which Mr. McCluney states that Plaintiff was mistaken in his belief that Mr. McCluney was the "Chief Podiatrist."  Ex. B at 1.  He also states, "I am not a podiatrist or a medical doctor, nor have I ever issued a special shoe pass to Mr. Turner.  In fact, I have no authority to issue shoe passes to Florida state inmates."  Id.  Instead, he is a private contractor with the Florida Department of Corrections, whose role as an orthotist is to "measure, design, fabricate, and fit various devices to support limb function and aid movement, pursuant to a physician's order." Id. In 1996 and 1997, pursuant to doctors' referrals, Mr. McCluney measured Plaintiff for shoes and a 3/8 of an inch lift.  Id. at 2.  Both Mr. McCluney and the Director of Health Services for the Florida Department of Corrections (Dr. Cherry) agree that special shoes are not needed to correct Plaintiff's leg length discrepancies and that a 3/8 of an inch removable lift may be used just as effectively in a pair of state-issued brogans as in tennis shoes or other special shoes.  See Ex. A at 22; Ex. B at 3.  The fact that other doctors in the past directed that Plaintiff be provided with special shoes does not support Plaintiff's deliberate indifference claim.  "[A] difference of opinion over matters of medical judgment does not give rise to a constitutional claim." Tedesco v. Johnson, 119 F.Supp.2d 1320, 1327 (M.D. Fla. 2000) (citing Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976)).

[9] Plaintiff also contends that the settlement in his previous civil rights action in the United States District Court for the Northern District of Florida required the Florida Department of Corrections to provide Plaintiff with special shoes for the remainder of the time Plaintiff is incarcerated.  The Court required the Defendant to respond to Plaintiff's contention.  See the Court's Order (Doc. #28), filed July 25, 2006.  Upon review of Defendant's Response to Plaintiff's Assertion in Doc #26 and #27 (Doc. #29), filed August 16, 2006, the Court is satisfied that the settlement in Plaintiff's previous civil rights action did not require the Florida Department of Corrections to provide Plaintiff with special shoes for the remainder of the time Plaintiff is incarcerated.

Accordingly, for all of the above-stated reasons, and for the reasons stated in the Defendant's Motion for Summary Judgment, the Court will grant Defendant's Motion for Summary Judgment and enter judgment in favor of the Defendant.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Defendant's Motion for Summary Judgment (Doc. #21) is **GRANTED.**

2. The Clerk shall enter judgment in favor of the Defendant and close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of August, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

ps 8/30
c:
Bobby Turner
Assistant Attorney General Wendy Benner-Leon